UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KATRINA R.,

    **Plaintiff,**

v.

COMMISSIONER OF SOCIAL
SECURITY,

    **Defendant.**

Civil Action 2:21-cv-4276
Judge Michael H. Watson
Magistrate Judge Chelsey M. Vascura

## REPORT AND RECOMMENDATION

Plaintiff, Katrina R. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security Period of Disability benefits, Disability Insurance benefits, and Supplemental Security Income benefits. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 7), the Commissioner's Memorandum in Opposition (ECF No. 8), Plaintiff's Reply (ECF No. 11), and the administrative record (ECF No. 6). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED**, and that the Commissioner's decision be **AFFIRMED**.

### I. BACKGROUND

Plaintiff filed an application for Title II Period of Disability and Disability Income Benefits on April 27, 2019, and an application for Title XVI Supplemental Security Income Benefits on April 29, 2019, alleging that she had been disabled since March 3, 2019. (R. 10, 210–11.) On July 16, 2020, following administrative denials of Plaintiff's application initially

and on reconsideration, Administrative Law Judge Patricia Witkowski Supergan (the "ALJ") held a hearing, at which Plaintiff, represented by counsel, appeared and testified. (R. 38–74.) A medical expert ("ME") and vocational expert ("VE") also appeared and testified at the hearing. (*Id.*) On October 8, 2020, the ALJ issued a decision denying benefits. (R. 10–18.) On July 1, 2021, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. 1–3.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

Plaintiff sets forth two contentions of error: (1) the ALJ failed to address all of the opined limitations when crafting Plaintiff's residual functional capacity, and (2) the ALJ lacked authority to issue a decision because the statute governing removal of the Commissioner of Social Security is unconstitutional. (Pl.'s Statement of Errors 5–12, ECF No. 7.)

## II. THE ALJ'S DECISION

The ALJ issued her decision on October 8, 2020, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 10–18.) At step one of the sequential

evaluation process,[1] the ALJ found that Plaintiff did not engage in substantial gainful activity since her alleged onset date of March 3, 2019. (R. 12.) At step two, the ALJ found that Plaintiff has the following severe impairments: Scleroderma, Reynaud Syndrome, and obesity. (*Id.* at 13.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix. (*Id.* at 13–14.)

> The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[2] as follows:
>
> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can occasionally climb ramps and stairs but never ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch and crawl; frequently reach in all directions including overhead with both upper

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[2] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

3

extremities; and frequently handle, finger and feel with both upper extremities. She can tolerate occasional exposure to and occasionally work around extreme cold and heat, and fumes, gases and other pulmonary irritants. She cannot tolerate any exposure to or work around hazards such as moving machinery or unprotected heights.

(R. 14.) At step four, relying on testimony from the VE, the ALJ found that Plaintiff was unable to perform her past relevant work as fast food services manager. (*Id.* at 17.) At step five, the ALJ determined that in light of Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform, such as inspector, assembler, or touchup screener. (*Id.* at 17–18.) The ALJ therefore concluded that Plaintiff was not under a disability at any time from March 3, 2019, the alleged onset date, through the date of the decision. (*Id.* at 18.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

4

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV. ANALYSIS

Plaintiff raises two issues in her Statement of Errors (ECF No. 7): (1) the ALJ failed to address all of the opined limitations when crafting Plaintiff's residual functional capacity, and (2) the ALJ lacked authority to issue a decision because the statute governing removal of the Commissioner of Social Security is unconstitutional. (Pl.'s Statement of Errors 5–12, ECF No. 7.) The undersigned considers each contention of error in turn.

**A. The ALJ did not err in considering the opined limitations of Dr. Fischer and Dr. Ajam.**

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1) (2012). A claimant's RFC assessment must be based on all the relevant evidence in a his or her case file. *Id*. The governing regulations[3] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)-(5); 416.913(a)(1)–(5). When evaluating medical

---

[3] Plaintiff's application was filed after March 27, 2017. Therefore, it is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c, 416.913(a), 416.920c (2017).

5

opinions, an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a).  Instead, an ALJ must use the following factors when considering medical opinions: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements."  §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).  Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered.  §§ 404.1520c(b)(2); 416.920c(b)(2).  And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so.  *Id*.  If, however, an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." §§ 404.1520c(b)(3); 416.920c(b)(3).

Here, Plaintiff contends the ALJ failed to account for opined limitations contained in opinions the ALJ found persuasive.  Namely, Plaintiff argues that the ALJ failed to address (1) medical expert Dr. Fischer's opinion that Plaintiff could not work in environments colder than 68 degrees Fahrenheit, and (2) treating rheumatologist Dr. Ajam's opinion that Plaintiff must wear gloves when exposed to cold.  (Pl.'s Statement of Errors 5, ECF No. 7.)

Plaintiff's arguments lack merit.  First, contrary to Plaintiff's assertion in her Statement of Errors, Dr. Fischer did *not* opine that Plaintiff's work environment must be no colder than 68 degrees.  Rather, Dr. Fischer opined that Plaintiff could "occasionally be around extremes of

6

temperature like heat or cold," and when asked by Plaintiff's counsel if "there is any kind of specificity to that or as degrees go," Dr. Fischer responded, "[n]o, nothing specific."[4] (R. 66–67.) In fact, Plaintiff offers only her own assertion that she cannot work in environments colder than 68 degrees, which the ALJ is not required to accept. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("an ALJ is not required to accept a claimant's subjective complaints"). Indeed, as expressly noted by the ALJ, "[t]here is no support in the record for the claimant's statement that temperatures below 68 degrees exacerbate her symptoms." (R. 16.)  The ALJ therefore sufficiently explained her reasoning in rejecting a limitation that Plaintiff cannot work in environments colder than 68 degrees.

Next, Plaintiff contends that the ALJ should have explained why she failed to include Dr. Ajam's opined limitation that Plaintiff must wear gloves when exposed to cold. Dr. Ajam, Plaintiff's treating rheumatologist, included in his progress notes that "[w]earing gloves when exposed to cold is recommended"; Plaintiff should "[a]void sudden changes in temperature, like walking into the frozen food section of a grocery store"; and that Plaintiff should "[d]ress

---

[4] Plaintiff's Reply contends that Dr. Fischer's later testimony went on to contradict this statement (Reply 3, ECF No. 11), but the undersigned disagrees with Plaintiff's characterization. The testimony on which Plaintiff appears to rely is as follows (during questioning by Plaintiff's counsel):

> Q:  Would it be reasonable for me to review this record and the claimant's testimony to—she's indicated pretty specifically 68 degrees is a difficult temperature for her to function underneath.  If it's colder than that, does that sound reasonable to you?
>
> A:  Yes.

(R. 67.)  The undersigned finds Plaintiff's counsel's question to be vague at best and it is not at all clear that Dr. Fischer's "yes" was intended to mean that it would be reasonable to restrict Plaintiff to work environments warmer than 68 degrees.  This question and answer immediately followed Dr. Fischer's testimony that he could not provide a specific degree range, and the undersigned finds it more plausible that Dr. Fischer intended to convey that "if it's colder than [68 degrees]", it would be "reasonable" for Plaintiff to work in those conditions.

7

warmly." (R. 507.) The ALJ discussed Dr. Ajam's opinion as follows: "The claimant's rheumatologist opined that the claimant should wear gloves when exposed to cold, avoid sudden changes in temperature, and dress warmly (Ex. 5F/5). This is persuasive, as the claimant has been limited from extreme cold to accommodate the Reynaud phenomenon." (R. 16.)

The undersigned finds no error with the ALJ's consideration of Dr. Ajam's recommendation that Plaintiff should wear gloves. As an initial matter, it should be noted that Dr. Ajam merely "recommended" that Plaintiff wear gloves when exposed to cold; he did not opine that Plaintiff could not be exposed to cold without wearing gloves. (*See* R. 507.) Yet a claimant's RFC is an assessment of the "most" he or she can do despite his or her limitations, 20 C.F.R. § 4040.1545(a)(1), not a description of what environment would be the "best" fit. *See, e.g.*, *Yerian v. Comm'r*, No. 2:17-cv-562, 2018 WL 4357479, at *2 (S.D. Ohio Sept. 13, 2018) ("A statement that Plaintiff would work best in a particular environment is not equivalent to an opinion that he lacks the capacity to work in any other type of environment."). Further, the ALJ expressly considered Dr. Ajam's recommendation to wear gloves when limiting Plaintiff to only occasional exposure to extreme cold. (R. 16.) Finally, the Vocational Expert testified at the hearing that, although she could not guarantee that the jobs falling within the ALJ's assessed RFC would provide a working environment of at least 68 degrees, most of the relevant jobs are at least semi-climate controlled, and none would require exposure to extreme cold or heat. (R. 72–73.) Thus, even if the ALJ had erred by failing to include a limitation in the RFC that Plaintiff must wear gloves when exposed to cold, any such error would be harmless, because the RFC assessed by the ALJ already limits Plaintiff to jobs where gloves would be unnecessary.

**B.     Plaintiff's constitutional claim lacks merit.**

Plaintiff's remaining argument turns on the constitutionality of the statute governing the Commissioner of Social Security's removal from office. As an initial matter, Plaintiff's

8

constitutional claim is procedurally improper. Plaintiff's Complaint does not include any constitutional claims. (*See* ECF No. 4.) Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, however, that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although a complaint need not provide "detailed factual allegations," at a minimum, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell v. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Here, the United States Supreme Court case upon which Plaintiff bases her constitutional claim was decided on June 20, 2020. Yet Plaintiff gave no notice, let alone fair notice, of her constitutional claim in her August 31, 2021 Complaint. *See John R. v Comm'r of Soc. Sec.*, Case No. C20-6176-MLP, 2021 WL 5356719, *7 (W.D. Wash. Nov. 16, 2021) (finding that a plaintiff failed to comply with Rule 8 by failing to plead a separation of powers claim in complaint seeking judicial review of Commissioner's decision to deny benefits); *Shannon R. v. Comm'r of Soc. Sec.*, Case No. C21-5173, 2021 WL 5371394, at * 6–7 (Nov. 18, 2021) (same). For that reason, Plaintiff failed to comply with Rule 8 such that her constitutional claim is not properly before the Court. Nevertheless, as explained below, Plaintiff's constitutional claim would fail on the merits.

Plaintiff relies on *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S.Ct. 2183 (2020). In *Seila Law*, the United States Supreme Court held that the Consumer Financial Protection Bureau's ("CFPB") removal structure, which allowed for the CFPB director to be removed by the President only for "inefficiency, neglect of duty, or malfeasance of office," 12 U.S.C. § 5491(c)(3), violated the separation of powers by insulating the director from removal by the President. *Id.* at 2197. Because 42 U.S.C. § 902(a)(3), the statute governing the Commissioner of Social Security's removal, contains a similar restriction on the President's

9

ability to remove the Commissioner except for cause, Plaintiff contends that § 902(a)(3) also unconstitutionally violates the separation of powers.  As a result, Plaintiff argues, "[t]he ALJ and Appeals Council judges here adjudicated the plaintiff's disability claim under the delegated authority of a Commissioner who had no constitutionally valid legal authority to delegate." (Pl.'s Reply 6, ECF No. 19.)

However, even assuming that § 902(a)(3)'s removal provision is unconstitutional, remand is not necessarily required.  In *Collins v. Yellen*, 141 S. Ct. 1761 (2021), decided the year after *Seila Law*, the Supreme Court considered a similar statute governing removal of Directors of the Federal Housing Finance Agency ("FHFA").  The *Collins* majority held that "[a]lthough the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office.  As a result, there is no reason to regard any of the actions taken by the FHFA [ ] as void." *Id.* at 1787 (emphasis in original); *see also id.* at 1788, n.23 ("Settled precedent also confirms that the unlawfulness of [a] removal provision does not strip the Director of the power to undertake the other responsibilities of his office[.]" (citing *Seila Law*, 140 S.Ct. at 2207–2211)). Instead, to obtain reversal of an agency decision, a plaintiff would need to demonstrate "compensable harm" flowing from the unconstitutional removal clause.  *See id.* at 1788–89 (remanding for further proceedings to determine whether compensable harm to Plaintiff occurred due to the President's inability to remove a Director of the Federal Housing Finance Agency except for cause).

Here, Plaintiff has made no showing of any possible compensable harm flowing from § 902(a)(3).  Nor is it likely Plaintiff could, because the President's choice of Social Security Commissioner has very little impact on the result of any particular ALJ or Appeals Council

10

decision. *Cf. Collins*, 141 S.Ct. at 1802 (Kagan, J. concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone . . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference."). Indeed, courts across the country have uniformly concluded that the allegedly unconstitutional nature of § 902(a)(3) does not require remand. *See, e.g.*, *Crawford v. Commissioner of Social Security*, No. 2:21-CV-726, 2021 WL 5917130, at *8 (S.D. Ohio Dec. 14, 2021); *Rhouma v. Comm'r of Soc. Sec.*, No. 4:20-CV-2823, 2021 WL 5882671, at *11 (N.D. Ohio Dec. 13, 2021); *Lisa Y. v. Comm'r of Soc. Sec.*, ___ F. Supp. 3d ___, No. C21-5207-BAT, 2021 WL 5177363, at *5 (W.D. Wash. Nov. 8, 2021); *Robinson v. Kijakazi*, No. 1:20-CV-00358-KDB, 2021 WL 4998397, at *3 (W.D.N.C. Oct. 27, 2021); *Alice T. v. Comm'r Soc. Sec.*, No. 8:21CV14, 2021 WL 5302141, at *18 (D. Neb. Nov. 15, 2021); *Standifird v. Comm'r of Soc. Sec.*, No. 20CV1630-GPC(BLM), 2021 WL 5634177, at *3 (S.D. Cal. Dec. 1, 2021). The undersigned finds the reasoning of these cases persuasive and reaches the same result here.

## V. DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting

11

authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE